UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO. 22-cr-20560 WILLIAMS

v.

LEIDYS DELMAS GARCIA,
        *Defendant.*

_____/

## OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT

Defendant, **LEIDYS DELMAS GARCIA** (Ms. Garcia), by and through undersigned counsel, files her Objections to the Pre-Sentence Investigation Report ("PSR") as follows:

### OBJECTION TO PART A. THE OFFENSE:
**The Offense Conduct - PARAGRAPH 30, 37, 52, 54, 59, 60, 62, 64, 71, 92 & 94
Role Assessment – PARAGRAPH 104, 108, 109 & 111-113**

Ms. Garcia objects to her being identified as a leader in paragraph no. 30 and 104 of the PSR. It was specifically agreed with the government that her role was best characterized as a manager for serving as a nominee owner for eleven (11) clinics that operated under the direction of others. The role of manager included the organization of each one of these clinics including its corporation set up and operation per instruction. Therefore, the aggravated role enhancement of organizer is appropriate and was agreed to in the plea agreement by Ms. Garcia. However, the funds, both receipt and disbursement, were ordered by others in the conspiracy. Ms. Garcia was not in control of those funds. She did not even control what her own personal gain was to be from her participation in the conspiracy. Consequently, the only conclusion is that Ms. Garcia was not a leader of any participant in this conspiracy, but she does not deny that within the confines of her role, she did participate in the organization, set up and operation as directed of the eleven (11) clinics filed in the State of Florida under her name.

1

Ms. Garcia did not serve as an advisor and/or mentor to any co-conspirator therefore objects to that description of her conduct in paragraph no. 37 of the PSR. In paragraph no. 52, the PSR states that Ms. Garcia "recruited" massage therapists. As such, she objects to that allegation. Ms. Garcia denies she ever recruited, contracted and/or hired a massage therapist. All the recruiting, hiring and/or contracting of massage therapists were done by other co-conspirators. Ms. Garcia does admit that, when instructed, she paid massage therapists. In paragraph 54, Ms. Garcia states that although she paid Daimara Borroto Garcia (Borroto Garcia), it was again at the behest of other co-conspirators and the specific reasons, other than the obvious general conspiratorial purpose, were not apparent to Ms. Garcia. As a result, Ms. Garcia objects to the general implication resulting from the description of her actions in paragraph no. 54. The same objection applies to Elias Caises Maurino (Maurino) in paragraph no. 59. In addition, Ms. Garcia objects to being implicitly characterized as an overall organizer of the entire conspiracy. Again, Ms. Garcia organized the set up and operation as directed of the eleven (11) clinics she was listed as the owner. She also, per instruction, facilitated payments of kickbacks to recruiters and patients as well as the transfer of money to and from a total of twenty (20) clinics as she admitted to in the factual proffer. With respect to Maurino, Ms. Garcia also did not use his license to open of the clinics and, therefore, objects to paragraph no. 60. (Same objection and reasons therein apply to paragraph no. 71). The above objections also apply to paragraphs no. 111 and 112.

Ms. Garcia only paid Julio Acosta Perez (Acosta Perez) as she was ordered to do. Ms. Garcia does not have specific knowledge as to how Acosta Perez's massage therapist license would be used to open a clinic. Ms. Garcia was not trying to conceal her role as she allowed herself to be used/listed as owner in eleven (11) clinics including two (2) of the four specifically mentioned in paragraph no. 62, Blue Diamond and Love Massage. In conclusion, Ms. Garcia objects to paragraph

no. 62 and paragraph no. 108 for the inaccurate implications it contains therein.  Additionally, Ms. Garcia did not have any specific "conspiratorial agreements" with Acosta Perez.  Also, Ms. Garcia never took part in the actual submission billing process part of this conspiracy so, as a result, Ms. Garcia objects to paragraph no. 64.

Ms. Garcia objects to be labeled as a true owner in paragraph no. 92.  A true owner would have had control of how the monies were spent and who were the beneficiaries of those monies. Every penny that Ms. Garcia received was allocated by co-conspirators, even the money she was able use for personal gain and benefit was only realized after a co-conspirator had authorized it.  Ms. Garcia objects to paragraph 94 by flatly denying being involved in any part of the conspiracy past the date of her arrest including the allegations included in the government's own objections to paragraph no. 94 (D.E. 168).

Ms. Garcia again objects to paragraph 104 and 113, but on different grounds having to do with her being described as a true owner and recruiter.  Furthermore, Ms. Garcia did not provide any "guidance" to Acosta Perez, Yohana Iriza, Anthony Lozada and Gabriel Lozada as to how to conduct health care fraud at their own clinics.  Ms. Garcia again asserts that not one co-conspirator worked "for" her as alleged in paragraph no. 109 when it states that Yarlon Valdes Morejon was a nominee owner "for" Ms Garcia, in part.

### OBJECTION TO PART A. THE OFFENSE:
#### Offense Level Computation – PARAGRAPH 121

A defendant's offense level is enhanced by two levels if the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. U.S.S.G. § 2B1.1(b)(10)(C). "Sophisticated means" means "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* § 2B1.1,

comment. (n.9(B)). Examples of sophisticated means listed in the commentary include hiding assets or transactions, or both, using fictitious entities, corporate shells, or offshore financial accounts. *Id*.

The PSR recommends a 2-level enhancement, asserting that the offense otherwise involved sophisticated means and Ms. Garcia intentionally engaged in or caused conduct constituting sophisticated means. The PSR, however, fails to specify how the offense here was otherwise sophisticated and what Ms. garcia did that constitutes (or what *evidence* shows) her having intentionally engaged in or caused the conduct constituting sophisticated means. The PSR only offers a conclusionary statement that the enhancement applies. There is nothing especially complex or intricate about the offense, however, because, in this case, the use of corporations in Ms. Garcia's name did little or nothing to conceal the fraud. In fact, the opposite is true. Bank accounts and payment records tied to Ms. Garcia shows payments to patient recruiters which demonstrated how the scheme worked and was carried out, namely by paying health insurance beneficiaries to pretend to be patients for whom physical therapy services were not provided or were not medically necessary. Accordingly, this is not a case where the use of a corporation or fictitious entity served to conceal the truth or the fraud. Rather, the use of Ms. Garcia's corporation to further the fraud *is* key evidence of the scheme.

Finally, other Courts in this district have found that the sophisticated means enhancement did not apply to defendants operating medical clinics engaged in similar activity. ECF 195 at P. 5 (citing *United States v. Yimi Suarez Amejeira,* Case No. 21-cr-20153-JLK; *United States v. Janoy Molina Fernandez*, Case No. 19-cr-20346- DPG; *United States v. Osvaldo Quesada*, Case No. 19-cr-20592-DPG; *United States v. Hector Perez Acosta*, Case No. 19-cr-20131-RKA.). The same should hold true here.

**RESPONSE TO GOVERNMENT OBJECTION TO PART C.
OFFENDER CHARACTERISTICS:
Employment Records - PARAGRAPHS 155 and 156**

Ms. Garcia has owned and operated Pelusin Learning Center since 2019.  The government refers in their objection that Ms. Garcia used her company to make payments to a patient recruiter.  Ms. Garcia does not deny these facts.  She admitted in the factual proffer to having received approximately eighty-nine thousand eighty dollars ($89,080.00) into Pelusin.  However, as she has always maintained and in line with the government's position, the monies she handled were mostly not hers to keep.  The illegal use and transfer of those funds does not diminish that Ms. Garcia provides an essential service to her community by operating a low-income daycare out of her home that allows parents to leave their minor children in a safe place while they go to work.

**OBJECTION TO PART D. SENTENCING OPTIONS:
Custody - PARAGRAPHS 170 and 171**

Defendant maintains the previous applicable objection to paragraph 121of the PSR as they apply to this section.  As a result, Defendant's total offense level is no more than twenty-seven (27).  Therefore, the guideline imprisonment range is seventy (70) to eighty-seven (87) months.

**OBJECTION TO PART E.
FACTORS THAT MAY WARRANT DEPARTURE: PARAGRAPH 182**

Defendant objects to this conclusion as it flies in the face of the information contained in this very PSR and contrary to law pursuant to 18 U.S.C. § 3553 that states the factors the Court must consider when fashioning an appropriate sentence.

**OBJECTION TO PART F. RECOMMENDED SPECIAL CONDITIONS**
**OF SUPERVISION:**
**Mandatory Conditions – PARAGRAPH 185**
**Standard Conditions of Supervision – PARAGRAPHS 205 and 206**

There is no basis in Ms. Garcia's history to require her to submit to one (1) drug test within fifteen (15) days of release from imprisonment and further submit to at least two (2) periodic drug tests thereafter.  As a result, Ms. Garcia objects to paragraph no. 185.  Ms. Garcia objects to being restricted from seeing her daughter while on probation/supervised release as requested in paragraph no. 205.  Finally, as previously mentioned, Ms. Garcia has operated Pelusin Learning Center since 2019, a lawful business with a lawful purpose that serves the greater community of Miami-Dade County.  Ms. Garcia objects to the self-employment restriction that would prevent her from lawfully operating Pelusin when she is on probation/supervised release.

**Law Office of Robert M. Perez, P.A.**
*Counsel for Defendant*
3162 Commodore Plaza, Suite 3E
Coconut Grove, Florida 33133
(305) 598-8889 - Office
(305) 397-2733 - Facsimile
E-mail: rperez@rmplawpa.com

**S/Robert M. Perez..................**
**ROBERT M. PEREZ**
Florida Bar Number: 477494

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically via CM/ECF on this 20th day of September 2023.

**S/Robert M. Perez..................**
**ROBERT M. PEREZ**